If it pleases the Court, Your Honors, my name is Charles Tony Picuta. I represent Appellants Todd and Ray Sharp who are in the Court today, in the third row. I believe the preliminary matter I'd like to discuss with the Court is my unique perspective on this matter. I used to represent banks and mortgages overseas for six years, so I hope I can present my arguments at the same time and answer any questions you may have that I see on both sides. I think the main issue that needs to be addressed with respect to this appeal is how far do we want Hamilton to go? Are we going to reel it in? Are we going to use the Hamilton decision as a tool to allow district courts to stop cases without them being heard on the merits? That's what Hamilton's been used to do in Trench, Graber, Raiden, and Anquan. I believe that specifically addressed a mistaken inadvertence element, and not necessarily so. It just goes to that issue in Anquan, which wasn't properly applied to this case. It said that an omission in motive is not enough. We have to look into the subjective intent of the individuals that made that omission, and here that never happened. That was also an omission for summary judgment, as was Hamilton. And now you have all these district courts who are applying it as an omission to dismiss sages just because there was an omission in a bankruptcy schedule. But I'm not sure that this is the right case to rein it in any further than Judge Graber has already done. Because what we have is four separate bankruptcy filings. The first one signed by Todd, and the second cluster of three by Maria. I think there's a fair argument that Maria was unaware of the nation's filings. I think the argument that Todd was unaware of the nation's filings is a little less strong. But it seems quite apparent that none of the bankruptcy filings were genuinely bankruptcy filings. They were all dismissed right away as, we're not talking bankruptcy. So the concern that Judge Graber had, with which I'm quite sympathetic, and she's very explicit about it, is that if we apply traditional snob rule against the bankrupt, what that really means is that the bankrupt then can bring a loss of doing a perfectly good loss. Some of that, the defendant is just playing off the hook as if it were a particular virtue of his own. And the money that the bankrupt might have brought into the estate, allowing a reopening of the bankruptcy, and impoverished, you know, creditors, that's no longer possible today. But they just exist here. So that's to say there is no genuine bankruptcy proceeding. There are no creditors who are therefore going to be punished because of the application of traditional snob rule. So the argument that was quite persuasive on the facts of a plan to Judge Graber, I think, just doesn't exist. So how do you respond to that? Well, Your Honor, I guess the threshold issue is those bankrupts that were filed here, which were, yes, you know everybody, on behalf of the real estate, were not legitimate bankrupts, because there's no doubt about that. The one that was filed by counsel for Mr. Sharpe was. But when it was dismissed, I wasn't getting anything. Well, no, it actually went through the process. It went a couple of months, and the attorney in that case who had filed that bankruptcy on his behalf was held in contempt of court in order to disclose his funds to Mr. Sharpe. So this was a system. I saw that when she gave me the plan that it was a false filing. You're telling me that it's not? It was a legitimate filing by an attorney with a law firm that is no longer in existence. I don't think he was a SEAL practitioner in the long-term. But if it was a legitimate filing, and it was called as an attorney, so we have to get the money back, then the filing is not revoked. Well, you could say that. So where's the bankruptcy? I mean, if the person is genuinely taking my secret notes, I would have thought that after the dismissal of Todd's bankruptcy filing, it would have been reviled. Another question? That's a point you can make, Your Honor. But I think, especially in California and Nevada, not so much in Iowa, where it's a nonjudicial foreclosure process for the majority of the foreclosures, and that process is moving so fast, and you have homeowners who are in distress, who, as you all know, have been victimized by attorneys-at-large, as well as these entities that popped up where there was extreme regulation by the bar, to stop that practice, the nonjudicial foreclosure process goes so much quicker than you can possibly get relief in the civil action that sometimes borrowers do file bankruptcy and deliberate the foreclosure. I'm not disputing that. But the question becomes, if they do that, are they precluded from their right and have a hearing or a lawsuit under meritorious claims? That really is the question for the Court. I don't understand. Judge Graver didn't rule for the bankruptcy. She said it back. She said on this record, I can't tell, because here's what my understanding is the bankruptcy has to show. My understanding here, although the standard review is very difficult, don't you have to show inadvertence or mistake and the burdens on your clients to prove that? In light of the facts, and here's my understanding of the facts, you've got a state court claim that was filed before the first bankruptcy. That is correct. And they had it in civil jurisdiction by the same attorney. How are you going to show? I mean, I apologize for interrupting. How are you going to show inadvertence or mistake? Well, exactly. That first lawsuit at the time that their bankruptcy was filed was the limited civil jurisdiction court. Actually, they were getting it. It was filed in the Superior Court. I don't care if it would have been the limited jurisdiction court. Limited civil versus unlimited civil. So I don't think that's adequate to allow you to bring objection from the agency with respect to property. I told you, it was an amount that was under a certain threshold of $25,000 at the time. It just mystifies me as to what was wrong with that lawsuit. It may not be worth sorting out, but it didn't make sense to me that that was a court of limited jurisdiction, but that's why that case went away. Nor was that lawsuit included in Siegel's felony bankruptcy that time in 2005. Well, I understand that. That's a problem. Of course. So then back to the argument. Essentially, are we going to use Hamilton as a tool to preclude meritorious claims? Because if you're going to do that, my thought is, you must at least take it to a motion for summary judgment, allow the individuals who are going to be judicially stumped to present some evidence. Here, on the amended complaint that was filed, they included the payment to help you stay. They included the proof from the bankruptcy court that the Attorney General contended in the case would be scorched, but that was glossed over by the district court judge. They didn't want to consider that. It was more about, okay, we know these bankruptcies were filed. We know that you delayed the foreclosure. We know that the automatic save was inadequate, and because of that, we're going to punish you. Regardless of that, you had a meritorious claim here. It was never considered. Can you guess? Could we talk about whether or not those claims were meritorious? Even if we agree with you that a judicial stumple should not have been applied, what claims were meritorious? Often it was a breach of a promise made for a loan modification. I want to be clear on the underlying facts. Also, while we can't measure, weren't the misrepresentation and the conversion claims that were asserted, weren't they time-barred? I would take a position that those weren't time-barred until the foreclosure sale was consummated in March of 2013. Is that consistent with California law, though, that says that claims arise at the time when the plaintiff's knowledge of the underlying facts adds to the injury? You could argue that at that point, a homeowner doesn't know what the foreclosure lender is going to do. Presumptively, they've made a mistake, which happens all too frequently. But the homeowner would know that a misrepresentation should be made or that the property had been taken? Well, that's right. The property being taken didn't happen until March of 2013. So if you're a homeowner sitting there and you have a letter... But you're saying your property's not taken until you've had your foreclosure? But when you get the notice, at that point, you're aware that your property's being de-interviewed. That's right. A notice of default would put you on notice that they're proceeding with a foreclosure sale. But again, there's all kinds of things that happen in between that time. Foreclosure sales are often delayed. If you submit a loan modification application package, the lender has to consider it and deny it before foreclosing. At that point, it's not in their writing. It's in their constitution. I believe that. You could argue. It may be subject to agency overrides. It's really what the lender was intending to do. So if you want to pick the first time that the lender sent back a payment under the loan modification, payments that were being sent in, that's in June of 2010, I would posit that it wasn't until the actual foreclosure sale was consummated. And I'd like to just add, real briefly, that this is a situation where my clients paid $63,000 in payments after the default towards a loan modification. Let me ask you a question. Judge Paul gave you three opportunities here. This is a 12B6 dismissal. There were no facts, affidavit documents, attached to any of the complaints. What's the unimportant service statement? I believe that the third amendment complaint was verified. And since it was verified, it did have the facts regarding the help you say. It did have proof that the payment was made to help you stay. And it did have information regarding the previous guilt that failed to posit you the bankruptcy properly. So with that, that would be the evidence. I'd perhaps, unfortunately, convert it to a Rule 56 and allow them to put more evidence forward, take a deposition from that attorney, or get an affidavit from the attorney that failed to adequately prosecute the bankruptcy in the first place. And if I stand, Mr. Attorney, what else can I do? Can you clarify, did you get that in the state court? There was a verification submitted with the complaint, Your Honor. You know, but that's in the Texas State Court. The state court did not receive an answer to the state court affidavit.  I suppose it should have been a declaration submitted, Your Honor. I think so. Yes, and I didn't handle the underlying case as well. Okay, James, we have about six minutes. I want to save three minutes. I have another minute left. If the court has any questions regarding what may be the HTG case or Stinson v. Ogden, I'd be happy to answer those as well. We'll see you at the end of the session. Thank you, Mr. Attorney. Thank you. Good morning, Mayor of the Police Court. I'm James Chilton on behalf of the defendants and the police. There are really two issues here, and you hit on them in response to the opening argument. One is the judicial example point, and the other is whether there are any meritorious claims, or put it another way, is the dismissal under 12b-6 subject to affirmance because the complaint does not allege a viable cause of action? Either one or both is sufficient to require affirmance here. The opening brief, which is the only brief filed by the appellants, doesn't discuss the second of those two issues at all. It never discusses why any of the claims alleged in the third-agenda complaint were sufficient to survive a 12b-6 subject victim. In determining the possibility to judge McCall, draw on her experience in making that determination that it didn't state a cause of action? Yes, I think she necessarily drew not only on her general judicial experience, but her experience with this particular case where she'd been through motions to dismiss multiple defendants. It seems to me that it all, to our least, requires the district court to draw on their experience to determine plausibility. Do you agree with that? Yes. In any case, as we set out in our appellee's brief, each of the causes of action alleged in the complaint was flawed for multiple reasons. Judge Rawlings mentioned the statute of limitations. That was really one of the several flaws that underline each of these causes of action. So then, this is a case that can easily be affirmed without even reaching the judicial estoppel point? It could easily work to reach the judicial estoppel point as a matter of law. Wouldn't you agree that the sharks would have had to obtain some sort of benefit from the representations in order for judicial estoppel to apply? That's one of the factors normally considered, yes. And what benefit did the sharks obtain as a result of their allowing the bankruptcy? The automatic stay. And is the automatic stay, in and of itself, sufficient to support a fine of judicial estoppel? Well, of course, that's an issue that is congested in this appeal. Judge Coe obviously held that it was. This court's decision in Hamilton has two sentences on the subject which point perhaps in the direction of saying it's enough. But Hamilton had something other than the automatic stay, right? It did. In Hamilton, there was a discharge of debt as well as the automatic stay. This court said, we're not saying you have to have a discharge of debt to have the benefit. It didn't say automatic stay is enough, but it didn't say it wasn't enough. It said that there were multiple ways that a bankrupt could benefit from bankruptcy proceedings other than discharge of debt. And here, I think we see that the facts show very clearly that the automatic stay was a benefit. Indeed, it was the only reason for filing the bankruptcies that were filed was to get that benefit from the bankruptcy court. But is it true that judicial estoppel law, is that you sometimes have not found a sense of benefit that the party was seeking to obtain a benefit? That is to say that there's something, I'm not sure what I want to say, improper about what was done or you wanted to do something and you said something and now we're going to stick it to you and you have to stay with it because you said it in order to obtain a benefit. Did it make any difference whether you actually obtained it or not? Well, I'd like to agree with you, Your Honor, and I'm sure I know of a case that actually holds that. I mean, how easily does it pass on? But here, one doesn't even have to go to that extreme because they actually did get the benefit of the automatic stay, which was the very thing they were seeking. They did get it for very long. How long did it take? Well, it took a long time. Well, it took largely, it was several months, as counsel for the appellant said, on the first bankruptcy. And being in, we don't, for judicialist hobble purposes, weigh the benefit to see whether the benefit is really worth it. Because what do you do with this language in our case, on King v. County Appellant, on the transportation where we see absence of sense in a prior proceeding, a party's later inconsistent decision introduces no risk of non-consistent court determinations and thus holds little threat to judicial integrity. What are we to think of that language in terms of whether or not a stay in and of itself is a sufficient benefit? What are we talking here in terms of success in a prior proceeding? I missed one critical wording, like you said, Your Honor. Absence of sense in a prior success. I'm sorry. The, well, I believe that there is success when you get the automatic stay. Lockean didn't address automatic stay and whether that was success or not. And in here, the abuse of the bankruptcy proceeding was really extreme. There were four bankruptcies. Each filed, as the appellants themselves tell you, for the sole purpose of delaying the eviction. And they did delay the eviction. And often the tenure proceedings in California are supposed to be expeditious. This one was delayed for at least half a year by reason of these bankruptcies. And it is an abuse of the bankruptcy process to make filings and not disclose assets to creditors. That is the reason why the judicial estoppel doctrine has been applied with. One might say severity in the bankruptcy context because. But didn't Judge Graber say, you know, Queen, well, that's the fault of the law. That doesn't go to the integrity of the courts. She made a distinction, and maybe one that I don't understand. But, you know, some of the cases that referred to the automatic stay as a clerical fact, it doesn't really accept the position of the filing bankrupt. Well, how does it work except in a different legal position than the one that Sartorius referred to? Excellent. That doesn't make sense in the bankruptcy context, I believe, Your Honor, because even a discharge doesn't accept the schedules that bankrupt files. It's a discharge. A licensed contestant under, what is it, 524, is a clerical sort of entry. As the automatic stay, in a Chapter 7, the bankrupt is entitled to a discharge, period, no matter what he says in the schedules, true, false, or otherwise. So you can't say that accepting that the court has to accept the position taken in bankruptcy for judicial estoppel to apply because something never happens. I overgeneralize. It does happen, but in the usual case, in all of the cases where this court has applied judicial estoppel, like Hamilton, a discharge was certainly sufficient benefit to make the doctrine applicable. And, as I said, a discharge is not a sentence of facts stated in the bankruptcy statute. Well, a state is automatic, so there's nothing to accept or reject that politically bankruptcy is found. That is certainly true. But, as I said, it's almost equally true of a discharge. Unless a creditor moves for a determination of non-dischargeability, a Chapter 7 debtor is entitled to a discharge. That's all there is to it. I don't see a lot of this at all. But why is it an objection, the representations that are contained in the documents are accepted as true? Well, not for purposes of a discharge. That's my point, that even if someone were able to show that any of the schedules were inaccurate, the debtor would be entitled to the discharge. And, Mr. Chuckler, we were doing, I think, there are eight other related claims, modification, the claim contract, et cetera, et cetera. Has that been waived by the appellants? No. No, you're in agreement, yes. Okay. Since the court has no further questions, I'll sit down. Thank you very much. Thank you. Do we have time? Thank you, Your Honor. I suppose the distinction I really want to point out with Hamilton was that the court there was trying to make sure that assets were not diverted from the bankruptcy creditors and that the failure to include that $170,000 property damage claim in Hamilton was a decision that all the creditors relied upon. Here, as Judge Fletcher pointed out, it wasn't an issue because money is worth a chip in bankruptcies by all appearances except for the one filed by a timeshare. But more importantly, when you file a wrongful foreclosure claim, you're trying to stop a foreclosure. You're trying to retain your hope. You're trying to keep intent, whether it be fully as originally was modified. So, in essence, if you're successful in resolving your wrongful foreclosure lawsuit the way you hope to, you're actually taking away from creditors in a bankruptcy. So it's completely opposite to what was happening in Hamilton, and that's why I think it's being misapplied by the district courts who are saying, okay, you have the automatic stay benefit. We don't care about your underlying claims, whether or not they're meritorious. I also need to point out that with respect to the bankruptcy code itself, it has certain safeguards with respect to this exact issue as far as automatic stays and successive filings. The bankruptcy code provides for that, and then you file a subsequent bankruptcy, you have less protection from the automatic stay, I believe, upon your third successive bankruptcy filing within a year. It seems like you have a right to the bankruptcy stay at all, and that's actually set forth in the briefing that I provided to the court. With that being said, if there's anything else, welcome to the court, Dennis. Mr. Kruger, why didn't your client obtain an unfair advantage? Well, I think if you're going to go towards the merits of the claim, you have to figure out first and foremost whether or not he has a meritorious lawsuit to know whether or not he gained an unfair advantage. No, I get it. That's what I mean. You can't say he gained an unfair advantage if you don't know whether or not his claims are meritorious themselves. All he did was allow a little bit of time to stop what was wrongful in the first place. Well, the counsel said that's the benefit, getting the stay. What's your response to that? I ain't going to wonder who's wrongful before closing on you. That's not a benefit. Well, it's a benefit, but you're saying it's not a benefit. No, I'm saying if the foreclosure isn't wrongful, if it's a foreclosure and you're filing the bankruptcies and it's gaining the stay protections under legitimate foreclosures, of course it's a benefit. But if you're just slowing down what should be solved in the first place and you've been able to protect your case fully after we were inserted a new product, a new re-injunction, and decided on the merits, that's a much different scenario. Anything further? No, we're good. Thank you. Thank you. Thank you. You can take both sides. Before we go, are you in charge for a suspect, and so are mortgage and rural loan services submitted? One last case on the calendar this morning, E.O. versus Renown. Renown.
judges: W. Fletcher, Rawlinson, Pratt